# Gilliford *versus* Windel.

1. To support an action for malicious prosecution the plaintiff must show (1) want of probable cause, and (2) malice. A want of probable cause is prima facie evidence of malice, but not conclusive, for the question does not depend upon the actual state of the case, but upon the honest and reasonable belief of the prosecutor.

2. A rejected offer to drop a prosecution for malicious mischief upon payment of costs is not evidence to show malice in the prosecution of that action, or of an action of larceny arising from the same transaction.

3. The evidence in this case held to show probable cause for the prosecution alleged to be malicious.

November 12th, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny*

[Gilliford v. Windel.]

*county:* Of October and November Term, 1884, Nos. 199 and 200.

These were two actions on the case for malicious prosecution brought by Edward Windel and Michael Windel by their father and next friend, Thomas Windel, against Robert H. Gilliford. The two cases arose from the same facts, which, on the trial before EWING, P. J., appeared as follows:

The defendant, Dr. Gilliford, was the owner of a building on Juniata street, Allegheny City, which he used as a bromine factory. This business required him to use large quantities of chlorate of potash, which he kept upon the premises. In April, 1883, a nephew of the defendant told him that one Alfred Shore had seen Crawford Wallace, Albert Fritchley and the two Windels, the plaintiffs, go into his works, take the potash, throw some on the floor, and carry some out. Dr. Gilliford, upon asking Shore, received the same information, and acting upon it made an information before Alderman Callen against the boys for malicious mischief. The parents of Wallace and Fritchley paid the costs and Gilliford dropped the prosecution against them. The father of the Windel boys offered to pay the costs of one of the cases if Gilliford would pay the other. This offer was refused, and Gilliford made information against the boys for larceny. Both cases were ignored by the grand jury, and these suits were instituted.

Edward Windel, one of the plaintiffs, aged thirteen, testified, according to the judge's notes, as follows: "We went to the factory, the door was shut but not locked; there was a fire on the street. Had a talk with a boy in reference to put something on the fire. I went into the shop and got some potash and put some on the fire, and then got a tin can and put some more in and took it down home. I threw some on the fire to make a little electric light. . . . . . I went in by the ash hole and went out at the door. The door was shut when I went in; it was open when I got out."

Michael Windel, aged fifteen, denied having taken any of the potash, or having thrown it on fire.

Michael Maloney, called in behalf of the plaintiff, testified that he was "with the Windels at the works and talked with Michael Windel, but saw nothing done that day."

Mrs. Windel, the mother of the boys, admitted that Edward had had some of the stuff at home.

W. M. Macrum, Esq., the plaintiffs' attorney, then testified under objection by the defendant: "I called on the defendant and urged him to drop the cases; told him I had heard he had paid 25 cents to the boy as a witness. He said he had brought the suits because the boys had been pestering him

[Gilliford *v.* Windel.]

about the factory, and he was determined to put a stop to it; said he had given the parents a fair chance to settle the cases; that if they would pay the costs he would drop the case, and he proposed to show them he could not be trifled with."

In behalf of the defendant Alderman Callen testified that at the hearing before him "Wallace, Shore and Fritchley testified that both Mike and Ed Windel had been in the bromine works and had taken out material; had scattered it over the floor and on the fire. Wallace testified that he saw Mike Windel come out of the bromine works carrying some of the stuff, and that he put it in a can and carried it home. Fritchley's testimony was about the same. Dr. Gilliford was present at the hearing. . . . . . After the hearing in the first cases an information was made for larceny. This was because at the hearing the testimony showed that the Windels had carried away the potash."

Edward Fritchley testified that at the hearing he was a witness, and then said : "All the boys were in the bromine works. Mike got some of the bromine and put it in a can and I went home with him, and he took it and put it in the woodshed to hide. . . . . . Ed also took some away. We all went in at the ash hole. Ed went in at the ash hole first, I next, then Mike."

Albert Shore testified that at the hearing before the Alderman, "I told there that these boys had taken potash and thrown it on the fire and floor, and that they had taken the potash."

The defendant requested the court to charge, inter alia, as follows :

(6) Under all the testimony in the cause the verdict of the jury will be for the defendant. Refused.

(7) As to the Edward Windel case, he having admitted the theft and there being no countervailing testimony, the jury will find for the defendant. To which the court answered : "Affirmed as to charge of larceny. Refused as to the charge of malicious mischief."

Verdict for the plaintiff in each case for $50 and judgment thereon. Whereupon the defendant took these writs, assigning for error, inter alia, the admission of the testimony of Mr. W. M. Macrum above noted, and the answers of the court to defendant's points.

*J. M. Stoner* (with whom was *I. N. Patterson*), for plaintiff in error.—In actions for malicious prosecution it is for the court to determine whether the proof of certain facts constitutes probable cause : Travis *v.* Smith, 1 Barr 234 ; and if the uncontradicted facts show probable cause, the court should

[Gilliford v. Windel.]

direct a verdict for the defendant, irrespective of the question of malice: Laughlin v. Clawson, 3 Casey 328 ; McCarthy v. De Armit, 3 Out. 63 ; Bernar v. Dunlap, 13 Norr. 331 ; Smith v. Ege, 2 P. F. Smith 419.   The testimony in this case abundantly showed probable cause for the prosecution, and the jury should have been so instructed.

The testimony of Mr. Macrum related to facts which occurred after the information for larceny had been made, and were not pertinent to show the motive of the prosecutor when proceedings were begun: McCarthy v. De Armit, 3 Out. 63.

*Wm. Macrum* (with whom was *Wm. Reardon*), for the defendants in error.—When the facts are in controversy and not admitted, the question is for the jury: McCarthy v. De Armit, 3 Out. 63–69.   The defendant's admission that he made the informations for larceny because the parties did not pay the costs in the malicious mischief cases, was evidence of malice: Prough v. Entriken, 11 Pa. St. 81 ; Schofield v. Ferrers, 47 Id. 194.

Mr. Justice GORDON delivered the opinion of the court, January 5th, 1885.

As it is the duty of every citizen to aid in enforcing the criminal laws of the state against those by whom they are wilfully disobeyed, so is it the business of our courts of justice to see that the person thus undertaking to vindicate the law shall not suffer in consequence of such an attempt, even though it may have proved abortive.   Hence it is, that it has ever been held that an action for malicious prosecution can be maintained only where the plaintiff can make it appear, (1) that the defendant in his attempted prosecution had no probable cause upon which to found it, and (2) that he was actuated by malice.   If the defendant is able to show probable cause, that is sufficient for his protection, and, in that case, his motive for the prosecution is not to be considered.   If there be no such cause shown, then the question is one of malice, and if the proofs exhibit an absence of this essential element of the plaintiff's case, the action cannot be legally sustained: Dietz v. Langfitt, 13 P. F. S. 234 ; Bernar v. Dunlap, 13 Nor. 329.   Whilst a want of probable cause is prima facie evidence of malice it is by no means conclusive, since, where it appears that there is a reasonable ground for the belief of guilt, without regard to what induced that belief, it ought to be regarded as a justification of the defendant's action, for, as we held in Smith v. Ege, 2 P. F. S. 419, and Seibert v. Price, 5 W. & S. 438, the question turns not upon the actual state of the case, but upon the honest and reasonable

12 OUTERBRIDGE.–10

[Gilliford *v.* Windel.]

belief of the party prosecuting. So where it appears that the defendant acted merely through mistake, or where the prosecution resulted from the mistake of the justice of the peace before whom the information was made, the action cannot be maintained: 2 Esp., N. P. 122; 2 Stark Ev., vol. 2, 688.

When we come to apply the legal principles here stated to the facts of the cases we have before us, we at once discover that it was a mistake in the court below to allow a verdict to be given against the defendant. The plaintiffs' evidence certainly exhibits probable, if not actual, cause for a prosecution. Edward Windel, one of the plaintiffs, in his testimony admits not only that he invaded the premises of the defendant, destroyed some of the potash by burning, but that he carried some of it away with him, thus proving not only malicious mischief but also theft. He likewise implicates his brother and some other boys as engaged in the same transaction. So Maloney swears that Michael Windel was at least part of the time at the fire when the boys were burning the defendant's potash. We think there was quite enough in this testimony to justify Gilliford in what he did, or at least to rebut the presumption of malice on his part in endeavoring to prevent, by a prosecution, the destruction of his property by a set of idle and malicious boys. Then, on part of the defendant, there is the testimony of Alderman Callen, Edward Fritchley, and Albert Shore, by which it is proved that the information was supported by evidence direct and positive that the plaintiffs had been guilty of entering the bromine factory, and carrying away and destroying the potash. This, again, in the language of the authorities, was such proof of probable cause for the prosecution as ought to have rebutted any presumption of malice which otherwise might have arisen. Neither do we see how the declaration of the defendant, that he had offered to drop the prosecution for malicious mischief against the plaintiffs if their parents would pay the costs, could properly be admitted to show malice. It is true, as was held in the case of Prough *v.* Entriken, 1 Jones 81, where a criminal charge is proved to have been instituted for the sole purpose of extorting money from another, the law will imply malice as well as the want of probable cause. But there was no pretence of any such thing in the cases before us; there was merely an offer to compromise on the payment of costs; a proposition proper and legal in itself, and entirely within the power of the parties: Sec. 9, Crim. Procedure Act, 31st March, 1860.

Again, in answer to the defendant's 7th point: "As to the Edward Windel case, he having admitted the theft, and there being no countervailing testimony, the jury will find for the

[Coal Co. v. Rogers.]

defendant," the court below said, " Affirmed as to the charge of larceny; refused as to the charge of malicious mischief." This was error; the point should have been affirmed. · As we have seen, the defendant could not be charged with malice from a mere mistake in the form of the procedure. The proof is that a crime was committed, and of such a character as warranted a prosecution, and we cannot see how the fact that an information was lodged for malicious mischief when the facts involved the higher offence of larceny, could be used as evidence of malice. Neither can we understand why this evidence is not sufficient for the purpose, at least, of establishing probable cause for the prosecution of both offences. Certainly the wanton destruction of part of the defendant's property would support an information for the offence first named, whilst the taking and carrying away of another part of the same property, *animo furandi*, would sustain a prosecution for the latter.

Thus, however we may view the ruling of the court below, it is found to be erroneous, and must, consequently, be reversed.

The judgments are, therefore, now reversed.