## Hubert *v.* The Alta Life Insurance Company, Appellant.

278

Argued November 9, 1937.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES, and
RHODES, JJ.

*Ralph S. Croskey,* of *Edwards & Croskey,* with him
*Theodore L. Reimel, Charles A. Lewis* and *Charles P.
Lewis,* for appellant.

*Benjamin H. Teplitz,* with him *George P. Henning,*
for appellee.

OPINION BY CUNNINGHAM, J., January 27, 1938:
The action below was in trespass for an alleged
malicious prosecution; the second trial of the case re-
sulted in a verdict for the plaintiff in the sum of $3,500,
reduced by remittitur to $2,500; and this appeal is by
the defendant insurance company from the judgment
entered for the latter amount.

In its assignments appellant complains of the refusal

of its point for binding instructions, the subsequent denial of its motion for judgment n. o. v., the refusal of a new trial, and the entering of judgment upon the verdict as reduced. Its contention that its point for binding instructions should have been affirmed, or judgment entered in its favor upon the whole record, is based upon the proposition that the trial judge should have declared as a matter of law thatl appellee had failed to establish want of probable cause—one of the essential ingredients of his case. As a general rule, the existence or want of probable cause "is a mixed question of law and fact, and, where the facts are in dispute, they must be submitted to the jury, who should be instructed as to what facts constitute probable cause." It is only where the facts are not in dispute and those facts, and the reasonable inferences therefrom, amount to probable cause that a trial judge may direct a verdict for a defendant: *Taylor v. American International Shipbuilding Corp.*, 275 Pa. 229, 231, 119 A. 130, and cases there cited.

An examination of the testimony demonstrates that the controlling facts in this case were in serious controversy and that the case was necessarily for the jury. J. H. Hubert, the appellee, is a resident of Pittsburgh. The substance of his story was that he had been employed by appellant for fifteen years to collect premiums and solicit new business on industrial insurance policies. His compensation was in the form of commissions of 20% on collections and 30% on new business. About July 1, 1932, he was desirous of quitting his employment because of ill health, but was persuaded by Harvey S. Fouse, appellant's manager of its Pittsburgh Branch, to continue his work until August 31st of that year. Appellant contended that the form of appellee's compensation was changed in July from commissions to salary, but appellee denied there had been any change in the nature of his compensation or in the

method by which he accounted to appellant for the moneys collected by him on its account. Appellee admitted that as of the end of August, 1932, he was indebted to appellant, upon the face of his accounts, in the sum of $159.39. He testified that as he would be entitled for a period of one year from that date to commissions on the weekly renewals of policies he had written, and as these commissions would amount approximately to $15 per month, it was agreed between Fouse and himself that he should retain the above mentioned $159.39 and that the commissions which he would otherwise have been entitled to receive in cash should be applied by appellant against this amount. Fouse flatly contradicted appellee's testimony upon this point and asserted that when appellee finally left the employ of the company he was unqualifiedly indebted to it for the balance shown by his account.

Some seven or eight months after appellee had resigned, counsel for appellant wrote him that he had been instructed by appellant to "take whatever action may be necessary and proper to collect" from him the sum shown on the books of appellant to be due, and giving appellee "an opportunity to settle" on or before April 26, 1933. In the letter appellee was requested to call on counsel to the end that counsel might explain to him "just what action" might be taken against him if he did not "care to settle this matter out of court." Appellee's counsel replied to this letter explaining that his client was ill and that appellee did not owe appellant "as much as that, if anything."

About one month later Fouse instituted criminal proceedings against appellee before an alderman, in which he was arrested and charged with embezzlement and fraudulent conversion. Appellee testified that at the hearing before the alderman Fouse offered to withdraw the prosecution if appellee would pay appellant $75. Upon appellee's refusal, he was, at the insistence of

appellant's representatives, placed under bail in the sum of $2,000 for his appearance at court. An indictment was returned against appellee by the grand jury but he was acquitted upon trial in the quarter sessions. Appellee stated he was under arrest for several hours before he secured bail and that he was obliged to pay $100 for a bond, and a fee of $100 to counsel for defending him. The record of appellee's acquittal was offered and received in evidence. Fouse and his attorney both denied either of them made the alleged offer to settle for $75, or for any other amount. Aside from this conflicting evidence, one of the defenses set up by appellant was that the prosecution had been instituted under the advice of counsel.

Charles P. Lewis, Esq., testified Fouse had consulted him "about the prosecution of Mr. Hubert" and he had advised him in the matter. No attempt was made to show what, if any, facts were disclosed to counsel as the basis for his advice. There was also testimony from which a jury could reasonably find that Fouse did not go to counsel for the purpose of securing advice upon the question whether appellee should be proceeded against criminally, rather than civilly, but, acting under general instructions from appellant to prosecute "any man" who "went short" for embezzlement, went to Lewis to instruct him to have appellee arrested. There was, therefore, evidence requiring submission to the jury of the question whether appellant's real purpose in commencing the prosecution was to compel appellee to pay the indebtedness alleged to be due from him. If a jury should adopt appellee's contention it would have before it prima facie evidence of a want of probable cause and of malice: *MacDonald v. Schroeder,* 214 Pa. 411, 63 A. 1024; *Edwards v. Stull,* 82 Pa. Superior Ct. 456; *Farneth v. Commercial Credit Co.,* 313 Pa. 433, 169 A. 89; and *Payne v. East Liberty Spear Co.,* 323 Pa. 100, 185 A. 853. From this review of the

testimony it is clear that appellant's point for binding instructions was properly refused and that the first and third assignments are without merit.

The second assignment, based upon the refusal of a new trial, raises the serious question involved upon this appeal. We have concluded the case was for the jury, but appellant was entitled to have it submitted under proper instructions. It is contended that the learned trial judge committed an inadvertent, but basic and fundamental, error by instructing the jury that if it found "proof of want of probable cause" it could "and *must* come to the conclusion there was *malice.*" The definitions given the jury of "probable cause" and of legal "malice" are unobjectionable, but at two places in the charge the trial judge, in our opinion, committed errors so basic and fundamental as to bring the matter before us under appellant's general exception to the charge. At one place the trial judge said: "If you find there was want of probable cause you may infer from that the wrongful act, and determine whether or not it was malicious. You may decide it was not. But if you find there is proof of *want of probable cause* you can and *must* come to the conclusion there was *malice.*" (Italics supplied)

These instructions were not only contradictory and confusing; the final statement was erroneous. In another portion of the charge the same error appears in the instruction that if the jury was convinced appellant "had no probable cause" for instituting the prosecution the verdict should be for the appellee if the jury found he had been injured. The entire sentence reads: "If you are convinced, of course, by the weight of the evidence that the defendant had *no probable cause,* your verdict should be for the plaintiff, if you find he has been hurt." (Italics supplied)

It has been repeatedly held by our Supreme Court and by this court that in order to sustain an action

for malicious prosecution the burden of proof is on the plaintiff to establish, by circumstances or otherwise, three elements: (a) termination in the plaintiff's favor of the criminal proceeding on which the prosecution is based, (b) want of probable cause, and (c) malice: *Altman v. Standard Refrig. Co., Inc.*, 315 Pa. 465, 173 A. 411; *Groda v. American Stores Co.*, 315 Pa. 484, 173 A. 419; and *Painter v. Roth et al.*, 118 Pa. Superior Ct. 474, 180 A. 49. The effect of proof by a plaintiff in an action for malicious prosecution that the criminal proceeding had terminated in his favor was clarified by our Supreme Court in the Altman and Groda cases, supra. At page 489 of the Groda case, Mr. Justice MAXEY said: "It has sometimes been held in this State in actions for malicious prosecution that proof that criminal proceedings against the person who was the defendant in the criminal case terminated in his favor either by an acquittal or by the discharge of the examining magistrate, was in itself evidence of the want of probable cause for the prosecution, and from it the existence of malice could be inferred and the burden of proof was then cast upon the civil defendant to prove the contemporaneous existence of probable cause for the prosecution he initiated. Such cases as have or seem to have supported this doctrine can no longer be considered as expressing the law of this State and they are now overruled to the extent that they support the doctrine herein repudiated. Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitutes proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action."

The trial judge correctly charged the jury that it could not infer want of probable cause from proof of the mere fact that appellee had been acquitted in the

criminal case, but erred in stating to them that if they found, from the weight of all the testimony, the second element—want of probable cause—they must conclude that the third element—malice—had been established, and their verdict should be for the appellee if they found "he has been hurt."

Under all the decisions, want of probable cause and malice are separate and distinct, but concurring, essentials of a charge of malicious prosecution. The most that can be said of their relation to each other is that malice may be inferred from the want of probable cause, (*Keener v. Jeffries,* 54 Pa. Superior Ct. 553, 556; *Tufshinsky v. Pgh. C.C. & St. L. Ry. Co.,* 61 Pa. Superior Ct. 121, 123; *Taubman v. Schulte, Inc.,* 302 Pa. 170, 153 A. 150,) but the latter is never legally conclusive of the former's existence and a jury is not required to draw an inference of malice merely because they may find a want of probable cause.

Perhaps the most succinct statement of the rule was made by Mr. Justice STERRETT in *McClafferty v. Philp,* 151 Pa. 86, 24 A. 1042, at page 90: "It was incumbent on the plaintiff to show not only that there was want of probable cause for the prosecution, but also that there was malice on the part of the prosecutor. *Want of probable cause and malice must concur. While the former is evidence of malice, proper to be submitted to the jury, it does not establish legal malice to be declared by the court.* Malice may be inferred from the want of probable cause, but if there be probable cause, it matters not that the prosecutor was actuated by malice." (Italics supplied)

In *Gilliford v. Windel,* 108 Pa. 142, Mr. Justice GORDON stated, (page 145): "Whilst a want of probable cause is prima facie evidence of malice it is by no means conclusive ......" Again, in *Humphreys v. Mead,* 23 Pa. Superior Ct. 415, speaking through Judge HENDERSON, this court said, (page 418): "Malice may

be inferred from a want of probable cause. The inference is one of fact, however, and not a conclusion of law. The want of probable cause becomes therefore evidence of malice, the existence of which is to be determined by the jury."

The instructions of the trial judge in this case to the jury that if they found want of probable cause they *must* conclude there was malice and that appellee was entitled to recover by showing only the favorable termination of the criminal proceeding and want of probable cause were in conflict with the established principles to which we have referred and require that the case be retried. Their effect was to permit a recovery upon findings of only two of the three essential elements of appellee's case.

Appellant also urges that the verdict is "excessive under the evidence." Under the conclusions we have reached upon the other features of the case it is unnecessary to consider this contention. The second assignment, charging error in denying appellant's motion for a new trial, is sustained.

Judgment reversed with a venire.