## Simpson *v.* Montgomery Ward & Company, Appellant.

372

Argued November 12, 1947. Before Rhodes, P. J., Hirt, Dithrich, Ross, Arnold and Fine, JJ. (Reno, J., absent).

*Lee C. McCandless,* for appellant.

*J. Campbell Brandon,* with him *Brandon & Brandon,* for appellee.

OPINION BY RHODES, P. J., March 8, 1948:

On the first trial of this action in trespass for alleged malicious prosecution, the jury returned a verdict against defendant and awarded plaintiff $3,000. From the judgment entered on the verdict, defendant appealed to the Supreme Court. The judgment was reversed and a venire facias de novo awarded (*Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A. 2d 674). The second trial resulted in a verdict for plaintiff in the sum of $600, which the jury designated as being, in part at least, punitive damages. The court below refused defendant's motions for judgment n. o. v. and in arrest of judgment; the court on plaintiff's motion granted a new trial in the interest of justice and because it considered the verdict improper. Defendant has appealed to this Court.

We shall briefly review the evidence presented at the second trial with special reference to that bearing on the question of probable cause. On July 13, 1944, plaintiff and two of her six children drove with plaintiff's mother, Mrs. Clara Headland, from a farm in Beaver County, where plaintiff and her family were living, to defendant's store in Butler, Pennsylvania. Plaintiff's purpose was to purchase a pair of white arch support shoes for her mother. Plaintiff had been in defendant's store on a previous occasion, about a month before, but she did not know any of defendant's employees. Plaintiff parked her automobile near the Hotdog Sandwich Shop on Jefferson Street some distance from defendant's store on Main Street.

It appears from the testimony of defendant's witnesses that Mrs. Donna Yarger McCall, a clerk in the shoe department of defendant's store, saw plaintiff, about 3 p.m. on July 13, 1944, take a pair of white shoes from a counter and cram them into her shopping bag; she saw them in the bag. Mrs. McCall reported the incident to J. J. Burns, manager of defendant's shoe department, who was waiting on other customers about twelve feet from plaintiff. As plaintiff was being pointed out to Mr. Burns their eyes met; plaintiff immediately walked across the store and into a small fitting room and placed her shopping bag back of the door of this room. Burns, who followed plaintiff to the fitting room, saw her place the shopping bag back of the door and reach down and fumble around in it. She then walked out of the fitting room without the bag, closed the door and left the store. Burns telephoned to the assistant manager, H. F. Bechtel. Mr. Bechtel and Harry Holliday, manager of the men's department, inspected the shopping bag left in the fitting room. The bag contained several articles of children's wear valued at about $15, bearing the tags of Montgomery Ward & Co. The merchandise was not wrapped, and no sales slips were issued by defendant's store in Butler for any of it. No shoes were found in this bag. In fact, defendant never found any shoes in plaintiff's bag or on her person.

Thereafter, Mr. Bechtel, the assistant manager of the store, dressed in his street clothes and wearing a hat, took a position in the shoe department and proceeded to try on shoes. In about fifteen minutes he saw a person, later identified as plaintiff, pick "a pair of white oxfords with medium heels" from a counter, make a quick glance in both directions, and then drop them into her shopping bag. The mother arose from a chair in the shoe department. Plaintiff and her mother immediately walked away and went to the stairway leading to the furniture department. They went up the stairs

to this department, turned around, came down and walked out of the building. Bechtel followed plaintiff, caught up with them in front of the store next door, identified himself, and asked plaintiff to see the receipt for the pair of shoes she had in the shopping bag. Plaintiff told Bechtel he would have to call the police if he wanted to see the contents of her bag. He asked her if she wanted the other bag that she had left in the store, and her answer was, "The one in the little room?" He testified, "I had made no mention of a little room." Bechtel reentered defendant's store and told Mr. Holliday to call the police. When Bechtel returned to the street, plaintiff and her mother were out of sight. Finally he observed them near Woolworth's store about half a block away. When he overtook them they were about to enter their parked car. The Chief of Police of Butler arrived as Bechtel was making a notation of the license number of the car. He told the chief of police about the pair of shoes he had seen plaintiff take from the counter, and also about finding the shopping bag containing children's wear in the fitting room immediately after plaintiff had left that room. Bechtel brought the bag and its contents found in the fitting room to the police station that evening, where plaintiff was temporarily detained. He did not know that Mrs. McCall previously had seen plaintiff take a pair of shoes from a counter until he returned to the store that evening after having reported the facts to the chief of police. Bechtel testified at the hearing the next day before the police magistrate. At that time he knew but did not state that a pair of white shoes had been found under the blanket counter during the night by a porter. The pair which had been found was very dirty and dusty. The chief of police had not received any information as to the finding of this pair of white shoes. At the hearing held on July 14, 1944, before the police magistrate, plaintiff was charged with violation of a city ordinance relating to suspicious persons. Subsequently that day plaintiff was charged with

larceny on information of the chief of police. In default of bail plaintiff was committed to the Butler County jail from eleven o'clock in the morning of July 14, 1944, until seven thirty o'clock that evening when she was released on $500 bail. She was pregnant at the time. She became ill in jail and required a doctor's attention. On August 22, 1944, after a hearing before an alderman she was held for the grand jury. The grand jury ignored the bill.

In reviewing the case on the former appeal to the Supreme Court, Mr. Chief Justice MAXEY suggested that certain questions be submitted to the jury in the form of requests for special findings as to the basic facts (354 Pa. 87, 101, 46 A. 2d 674), for the purpose of having the trial court determine the question of probable cause as a matter of law. The trial judge at the second trial submitted the following questions to which the jury gave the answer indicated in the form of special findings:

"1. Did Donna Yarger McCall honestly and reasonably believe that she saw the plaintiff, Alberta Simpson, take a pair of shoes from the defendant's counter and put them in her shopping bag?

"Answer: Yes.

"2. Did Mrs. McCall report such an occurrence to the Manager of the Shoe Department of defendant's store, J. J. Burns?

"Answer: Yes.

"3. Did J. J. Burns honestly believe that he observed Alberta Simpson take into the fitting room a shopping bag which was found to contain articles of juvenile wear which were apparently stolen?

"Answer: Yes.

"4. Did Mr. Burns report such an occurrence to Homer F. Bechtel, defendant's Assistant Manager?

"Answer: Yes.

"5. Did Homer F. Bechtel, Assistant Manager of defendant's store in July 13, 1944, honestly and reason-

ably believe that he saw the plaintiff, Alberta Simpson, take a pair of shoes from defendant's counter and walk off with them?

"Answer: Yes.

"6. When Homer F. Bechtel, as defendant's Assistant Manager, made the complaint against Alberta Simpson to C. E. Fend, Chief of Police of Butler, was he acting in an honest and reasonable belief that he had seen the plaintiff, Alberta Simpson, unlawfully take defendant's shoes, or on an honest and reasonable belief in the truth of the reports of Donna Yarger McCall or J. J. Burns?

"Answer: When Homer F. Bechtel, as defendant's Assistant Manager, made the complaint against Alberta Simpson to C. E. Fend, Chief of Police of Butler, he was acting in an honest and reasonable belief in the truth of the reports of Donna Yarger McCall and J. J. Burns.

"7. Did the defendant's Assistant Manager, Homer F. Bechtel, know that the white shoes were found in the store before the information was made at the Alderman's office?

"Answer: Yes.

"8. Did defendant's Assistant Manager, Homer F. Bechtel, conceal from the Chief of Police the information that the white shoes had been found until after the information had been made at the Alderman's office?

"Answer: Yes."

Appellant assigns as error the refusal of its motion for judgment n. o. v., the refusal of its motion in arrest of judgment, and the order granting a new trial to plaintiff.

Appellant's first contention is that the eight special findings, the first six of which were answered in appellant's favor, determined the existence of probable cause for the prosecution, conclusively and as a matter of law, in appellant's favor. Consequently, appellant states, its motions for judgment in its favor should have been

granted. But we are of the opinion that on the record, including the special findings, in this second trial judgment in favor of appellant cannot be entered as a matter of law. There was a conflict in the evidence as to the circumstances which gave rise to the prosecution. Therefore, the trial judge very properly attempted to carry out the suggestion in *Simpson v. Montgomery Ward & Co.,* supra, 354 Pa. 87, 100, 101, 46 A. 2d 674, and submitted to the jury questions for special findings of fact so that with these questions answered the existence or nonexistence of probable cause could be determined as a matter of law by the court. Unfortunately, it seems to us, the eight special findings did not fulfill their purpose, and it follows that the question of probable cause cannot be decided upon the basis of these findings. The first five findings indicate clearly that Bechtel had probable cause for initiating the prosecution. This is especially true of finding No. 5 to the effect that Bechtel honestly and reasonably believed that he saw plaintiff take a pair of shoes from appellant's counter and walk off with them. By this finding the jury resolved the principal factual issue on conflicting evidence in appellant's favor. The fifth question for special finding is substantially the same as question No. 3, which Mr. Chief Justice Maxey (354 Pa. 87, 101, 46 A. 2d 674) suggested as material to be asked the jury on the retrial of the case.

On the other hand, finding No. 6 is not responsive to the issue and shows on its face that the jury was confused. The sixth question is phrased in an unfortunate manner. We believe the jury could interpret this question as asking in the alternative whether Bechtel, in making the complaint to the chief of police, acted (1) on the fact he personally saw plaintiff take a pair of shoes from appellant's counter, or (2) on the honest and reasonable belief in the truth of the report of other employees of appellant. The proper purpose of such a question could only be to determine whether Bechtel

was acting on an honest and reasonable belief in the guilt of the accused (1) by reason of what he personally observed, or (2) by reason of what others reported to him; and his honest and reasonable belief in the guilt of the accused could be based on either factor or on a combination of both factors.

The jury answered, as to question No. 6, that Bechtel acted on an honest and reasonable belief as to the second factor, that is, the truth of the reports of Mrs. McCall and Mr. Burns. The jury did not in its answer to the sixth question make any finding as to Bechtel's reasonable and honest belief in what he said he saw. It seems to us that the court below in its opinion, by a rather strained interpretation, reads finding No. 6 as indicating "that by the time Bechtel gave Mr. Fend [Chief of Police] the evidence upon which Fend based the information against plaintiff, Bechtel no longer believed that plaintiff had stolen the second pair of shoes." In arriving at this conclusion, the court below apparently reasons as follows: Bechtel believed the pair of shoes found under the counter was the identical pair he saw plaintiff take; therefore when he made the final report to the chief of police, he no longer believed that plaintiff had the shoes he saw her take but relied entirely upon the report of the other employees to him. In other words, an interpretation is thus placed upon finding No. 6 which, in effect, contradicts finding No. 5. It may be that under question No. 6 as phrased the court's interpretation is permissible. However, the result is that findings Nos. 5 and 6 are contradictory and confusing, and wholly ineffectual to fulfill the only purpose which justified their existence. When the case is retried we think the sixth question should be rephrased into two questions, or so stated that the jury's finding thereon will not be a matter of obscure inference and possibly contradictory to a finding on the fifth question. It will be noted that question No. 4, suggested by Mr. Chief Justice MAXEY (354 Pa. 87, 101, 46 A. 2d 674), relates only to a

report to Chief of Police Fend based on the honest and reasonable belief that Bechtel saw plaintiff unlawfully take into her possession a pair of appellant's shoes.

The basic issue on the question of probable cause is not complicated. As Mr. Chief Justice MAXEY stated (354 Pa. 87, 96, 46 A. 2d 674, 678) : "The issue on this phase of the case is : Did the defendant 'honestly believe' that the accused committed the crime for which he was prosecuted and was that belief based on 'a reasonable ground of suspicion of guilt :' . . . *If* there is a 'conflict in the testimony as to what the circumstances were' out of which the prosecution arose, . . . the trial judge . . . can submit that testimony to the jury with instructions to render a special verdict . . . answering, inter alia, the question as to the existence or non-existence of an honest, reasonable belief on the part of the person initiating the prosecution, of the guilt of the accused . . ."

It is evident that, in submitting questions to establish facts upon which probable cause may be decided by the court, the questions should be limited to basic and fundamental facts, and that they should be as few in number as the evidence in the case will permit. Special findings on this issue are primarily concerned with the honest and reasonable belief of the prosecutor in the guilt of the accused. Such findings should avoid, as far as possible, reference to collateral issues which may be suggested by the evidence.

We are of the opinion that the court below properly refused appellant's motions for judgment. Findings Nos. 5 and 6 are insufficient to permit disposition of the ultimate legal question of probable cause. As this Court stated in *Hubert v. The Alta Life Insurance Co.,* 130 Pa. Superior Ct. 277, 279, 196 A. 513, 514 : "It is only where the facts are not in dispute and those facts, and the reasonable inferences therefrom, amount to probable cause that a trial judge may direct a verdict for a defendant."

In view of the fact that the case must be retried, it is necessary to consider special findings Nos. 7 and 8 to the effect that Bechtel knew that a pair of white shoes had been found and had concealed this information from the chief of police until after the prosecution had been commenced. We should point out here that finding No. 7, referring to "*the* white shoes [which] were found in the store," could not be interpreted to mean anything more than that *a* pair of white shoes was found on the night of July 13th under the blanket counter. There is nothing to show that these shoes were any that plaintiff had picked up and later disposed of. Certainly these findings are not so clear as to permit the court to draw the inference that *the* pair of white shoes was the particular pair which Bechtel saw plaintiff put in her bag.

Findings Nos. 7 and 8 are not consistent with the findings which do constitute probable cause. It is doubtful whether these two questions were sufficiently basic to require submission to the jury. They tend to inject collateral issues on the question of probable cause. In any event, questions 7 and 8, as answered, were not determinative on the issue of probable cause. If answered in the affirmative, as they were, they require the submission of still another question, that is, Did Bechtel act in an honest and reasonable belief, at the time of the prosecution, that plaintiff unlawfully took a pair of appellant's shoes, even though he knew a pair of white shoes had been found under the blanket counter by a porter on the night of July 13th? The finding of a pair of white shoes under the blanket counter does not necessarily mean that Bechtel, as an honest and reasonable man, did not still believe that plaintiff had stolen the pair he saw her take from the counter and place in her bag just before leaving the store.

In submitting the eight questions to the jury for special findings, the trial judge in this case did not adopt the practice of having the jury find a special verdict.

As Mr. Chief Justice MAXEY (quoting from *Standard Sewing Machine Co. v. Royal Insurance Co. of Liverpool*, 201 Pa. 645, 647, 51 A. 354) points out (354 Pa. 87, 101, footnote 3, 46 A. 2d 674, 680), a special verdict must find all the essential facts in a case. However, a general verdict accompanied by answers to specific questions is not a special verdict. *Schmidt v. Campbell et al.*, 136 Pa. Superior Ct. 590, 595, 596, 7 A. 2d 554; *Fulforth et al. v. Prudential Insurance Co. of America*, 147 Pa. Superior Ct. 516, 523, 24 A. 2d 749.

It is permissible for the trial court to adopt either procedure, that is, a special verdict or a general verdict accompanied by special findings, for the purpose of deciding probable cause as a matter of law in actions for malicious prosecution. However, the special verdict or the special findings must be sufficiently clear, complete, definite, and material, so as to enable the court to pass upon the ultimate legal question of probable cause. 6 Standard Pennsylvania Practice, pp. 220-224, §§64-67. For instance, in *Thompson v. Emerald Oil Co.*, 279 Pa. 321, 123 A. 810, the jury's special verdict in an action for breach of a written contract of employment was extremely brief and incomplete. Mr. Justice KEPHART stated (279 Pa. 321, 326, 123 A. 810, 811) : ". . . when a special verdict has been returned by the jury answering only a part of the issues in the case or is open to conflicting inferences on a particular issue determinative of a substantive part of the case, the court cannot, after the jury has been discharged, mold the verdict into what it thinks the jury intended to find."

We do not find any merit in appellant's assignment of error relating to the order of the court below granting a new trial. As a matter of fact, appellant's counsel in this appeal seems to rely principally, if not entirely, on the point that the special findings are conclusive in appellant's favor. In granting a new trial the court below, in effect, gave the following reasons: (1) It is

impossible to determine from the form of the jury's verdict whether that verdict represented anything but punitive damages; (2) if considered as compensatory damages the verdict is inadequate; and (3) "the interests of justice generally require [a new trial]." The granting of a new trial in the interest of justice is entirely a matter of discretion with the court, and it is hardly necessary to cite authority that such an order will not be reversed unless a clear abuse of discretion appears. *Standard Oil Co. of New Jersey v. Graham Oil Transport Corp.*, 157 Pa. Superior Ct. 41, 43, 41 A. 2d 414; *Durdella v. Rothman et al.*, 159 Pa. Superior Ct. 508, 49 A. 2d 64; *Burton v. Morvay*, 348 Pa. 113, 34 A. 2d 489; *March v. Philadelphia & West Chester Traction Co.*, 285 Pa. 413, 416, 132 A. 355. No abuse of discretion is shown here. On the contrary, the court below had ample reasons for its order granting a new trial.

All the assignments of error are overruled.

The order of the court below granting a new trial is affirmed.