## Simpson *v.* Montgomery Ward and Company, Appellant.

Argued April 13, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Lee C. McCandless,* for appellant.

*J. C. Brandon,* with him *Brandon & Brandon,* for appellee.

OPINION BY RHODES, P. J., September 27, 1949:

This is the third appeal after the third trial of an action in trespass for malicious prosecution. *Simpson v. Montgomery Ward & Company,* 354 Pa. 87, 46 A. 2d 674; *Simpson v. Montgomery Ward & Company,* 162 Pa. Superior Ct. 371, 57 A. 2d 571. The jury again found for the plaintiff, and defendant has appealed from the judgment entered on the verdict. We shall set forth the evidence presented on the third trial to show the circumstances out of which the prosecution arose and the sharp conflict in the respective versions of what occurred.

Plaintiff testified that, with her mother and two children, she drove from their farm in Beaver County to Butler on the afternoon of July 13, 1944. One of the purposes of the trip was to purchase a pair of white arch support shoes for the mother. Plaintiff left her children in her parked car on Jefferson Street and proceeded with her mother to defendant's store on Main Street. After entering the store the mother tried on shoes while plaintiff looked for the right size at a bargain rack at a nearby table. On the way to the shoe department plaintiff had purchased a paper of safety pins which she placed in her paper shopping bag and for which she had a sales slip. A clerk in the shoe department of defendant's store, Mrs. Dona Yarger McCall,

assisted plaintiff's mother in trying on shoes. While the clerk was waiting on plaintiff's mother, plaintiff returned to the parked car where she had left the children. Upon her return plaintiff met her mother coming out of the store and persuaded her to reënter and make another attempt to obtain shoes that would be satisfactory. The mother was unable to obtain any that were suitable. They thereupon left the shoe department and started to walk up the mezzanine stairs to the furniture department, but upon realizing that the hour was late they turned back and walked out of the store. They had just left the store and were walking down the street when an unidentified man (later shown to be H. F. Bechtel, defendant's employe and assistant manager) stepped in front of plaintiff and demanded that she produce a pair of white shoes or a sales slip. He also demanded that plaintiff show him the contents of her shopping bag, and stated that he would call the police if she refused. Plaintiff testified that thereupon another individual, later identified as Harry W. Holliday, manager of the men's department of defendant's store, came out of the store. Bechtel, as yet unidentified to plaintiff, told Holliday to call the police. Bechtel followed plaintiff and her mother down the street to their parked car, and did not allow them to get out of his sight.

At the car the Chief of Police of Butler, Clarence E. Fend, identified himself to plaintiff, and at his request she handed her shopping bag to him for examination. Fend took the shopping bag and proceeded with plaintiff in her car to the police station. An examination of her shopping bag revealed nothing except her purse and the package of safety pins for which she had a sales slip. Plaintiff was held for questioning. Later Bechtel brought in a bag containing items of children's clothing; there were no sales slips with this merchandise which was identified as having come from defendant's store.

Bechtel accused plaintiff of having left this bag in a fitting room in the store. Plaintiff denied that the bag belonged to her or that she had been in a fitting room in the store. Bechtel stated that if plaintiff would pay for the merchandise in this bag, having a value of about $15, he would drop the whole matter. Plaintiff refused to pay for the goods or to sign a confession. She was allowed to leave the police station to return to her home on her promise to appear again on the next morning. Plaintiff and her mother returned to the police station the next morning, July 14th.

Plaintiff was present at the hearing on the morning of July 14th with her counsel. H. F. Bechtel, defendant's assistant manager, Harry W. Holliday, manager of the men's department, J. J. Burns, manager of the shoe department, and Mrs. Donna Yarger McCall, a clerk in the shoe department, all employes of defendant at the time, testified at the preliminary hearings. Plaintiff was committed on July 14, 1944, on a charge of larceny, and on August 22, 1944, she was held for the grand jury. At the police station plaintiff heard Mrs. McCall ask Bechtel if they should tell the chief of police about the shoes they found under the counter during the night, and that Bechtel told Mrs. McCall to keep quiet about it. According to plaintiff, Bechtel expressly stated that she had taken a pair of shoes and "the small stuff," and that he wanted her held on a larceny charge. Plaintiff, who was pregnant at the time, was finger printed and photographed by the state police and committed to jail, where she became ill and required medical attention. There was corroboration of plaintiff's testimony.

The testimony of defendant's employes was at variance with that of the plaintiff in many respects. Mrs. McCall, a clerk in defendant's shoe department, testified that while about to wait on plaintiff's mother she saw plaintiff take a pair of shoes from the bargain rack

and put them in her brown shopping bag; that she stood close to plaintiff and saw the shoes near the top of the bag; that as she identified plaintiff to Burns, manager of the shoe department, plaintiff ran across the store into a fitting room. Mrs. McCall admitted that she asked Bechtel at the hearing the next day whether he knew a pair of shoes had been found under a counter. According to her, Bechtel replied that he knew a pair of shoes had been found, but that Bechtel did not tell her to conceal that fact from the chief of police.

J. J. Burns, manager of the shoe department, testified that he saw plaintiff enter the fitting room immediately after Mrs. McCall had pointed her out to him. He said he saw plaintiff enter the fitting room with a shopping bag and emerge without it, and that he then telephoned upstairs for Bechtel or Holliday. Holliday came down with Bechtel and they examined the contents of the shopping bag found in the fitting room. It contained unwrapped merchandise with defendant's store marks thereon; there were no sales slips with the respective items. No shoes were found in the bag.

Bechtel testified that he then stood in the shoe department and saw plaintiff, who had been pointed out to him by Mrs. McCall, return. As he watched her, he saw plaintiff take a pair of white oxfords (low-heeled, nurses' style) from the counter and drop them in the shopping bag which she was carrying at the time. Plaintiff walked across the store to the steps leading to the mezzanine floor and was joined by her mother. According to Bechtel he followed plaintiff and observed that both went up to the mezzanine floor; that they came down immediately and walked out of the store. Following them out of the store, Bechtel identified himself to plaintiff and told her that he was from the store of Montgomery Ward & Company. He asked her for the receipt for the pair of shoes she had placed in her bag in the store. He testified that plaintiff told him he

would have to call the police if he wanted to discover the contents of the bag; that he then returned to the store to notify Holliday to call the police; that in the meantime he lost sight of plaintiff and her mother; that he caught up with them, and as he was noting the license number of their car the chief of police arrived. He told the chief of police what had occurred in the store. According to Bechtel, the chief of police asked him to bring the bag containing children's clothing to the hearing. Bechtel denied that he asked plaintiff to pay for the merchandise in the shopping bag which was found in the fitting room. He stated he knew a pair of dusty shoes had been found under a counter by the jaintor during the night. These shoes were of a different type from the pair he saw plaintiff put in her bag, and he did not mention to the chief of police the fact that they had been found. Bechtel, on cross-examination, testified that his failure to accost plaintiff in the store was due to the fact that it was a rule of the store that a customer could pick up merchandise, carry it around the store, and pay for it at any time before leaving.

Defendant's first contention is that its motion for judgment n. o. v. should have been granted because there was no evidence that its agents instituted the criminal proceedings against plaintiff. In these proceedings, Chief of Police Fend was the named prosecutor. Defendant argues that its agents did no more than turn over the information to the chief of police, who then made the formal charge in accordance with his own judgment. Plaintiff testified that Bechtel, defendant's assistant manager, at the hearing before the magistrate, insisted that she be held on a larceny charge. Three of defendant's employes, including Bechtel, testified against her at this preliminary hearing. There is ample evidence in the record, which, if believed, would support the jury's verdict and a finding that defendant, through its agents and employes, was the real prose-

cutor and took an active part in initiating the prosecution. If defendant was the real instigator of the criminal prosecution, it would not be relieved of liability by showing that it was not the prosecutor of record. *Baker v. Moore*, 29 Pa. Superior Ct. 301, 306. Defendant would be liable as a party to the prosecution where the arrest was made at the instance, and with the knowledge and consent, of defendant, although the officer of defendant company was not expressly directed to act. *Cooper v. Electro-Tint Engraving Co.*, 70 Pa. Superior Ct. 517, 521. Where an agent institutes an unfounded prosecution, the liability of the principal is governed by the general principles of agency. *Farneth v. Commercial Credit Co.*, 313 Pa. 433, 439, 169 A. 89.

Secondly, defendant is not entitled to judgment n. o. v. on the ground that the trial judge should have declared the existence of probable cause as a matter of law. Obviously, there was in this case a sharp conflict of testimony as to what the circumstances were out of which the prosecution arose. The trial judge therefore properly followed the procedure prescribed by the Supreme Court in an earlier appeal (354 Pa. 87, 96, 97, 46 A. 2d 674), and submitted the evidence to the jury with instructions to make a special finding as to the existence of an honest, reasonable belief on the part of the person or persons initiating the prosecution. See Restatement, Torts, §662. The jury found[1] that they did not reasonably believe that plaintiff had committed larceny. According to plaintiff's own testimony, she went in defendant's store twice on July 13, 1944, in an attempt to find a suitable pair of shoes for her mother. Not finding such shoes, she walked out of the store and was thereupon accosted by defendant's employes. She

---

[1] "1. Did the employees of Montgomery Ward and Company at the time or times of turning the information over to the Chief of Police, C. E. Fend, honestly and reasonably believe that Alberta Simpson had committed the crime of larceny?

"Ans. No."

was arrested at their instance, charged with larceny, in default of bail committed to jail, and subsequently held for the grand jury. The grand jury ignored the bill.

Plaintiff denied taking any shoes in defendant's store. She also denied that she had entered the fitting room or that she left any shopping bag there. On the other hand, defendant's witnesses testified that employes of defendant saw plaintiff on two occasions take shoes from defendant's counter in its store and place them in her shopping bag. However, the shoes which Mrs. McCall allegedly saw plaintiff put in her bag were not found in the fitting room where plaintiff was said to have gone. No shoes were ever found in plaintiff's shopping bag or in her possession. Nor was plaintiff directly connected with the children's clothing found in the bag in the fitting room. In view of this conflicting evidence, existence of probable cause could not be declared as a matter of law. It is only where the facts are not in dispute and those facts, and the reasonable inferences therefrom, amount to probable cause that a trial judge may direct a verdict for defendant. *Hubert v. Alta Life Ins. Co.*, 130 Pa. Superior Ct. 277, 279, 196 A. 513; *Simpson v. Montgomery Ward & Company*, supra, 162 Pa. Superior Ct. 371, 380, 57 A. 2d 571.

Finally, judgment n. o. v. could not have been entered for defendant on the ground that there was insufficient evidence of malice, or use of criminal process for a purpose other than that of bringing an offender to justice. The jury's second special finding[2] that defendant did not employ the criminal prosecution to obtain payment for the goods which she was alleged to

---

[2] "2. Did the defendant by its agent, Homer J. Bechtel, employ the criminal prosecution to endeavor to obtain from the plaintiff, Alberta Simpson, payment for all or part of the goods which she was alleged to have taken?

"Ans. No."

have taken, was not conclusive against the existence of malice, as that term is used by our appellate courts. Use of criminal process for the purpose of enforcing a civil debt is only one of the factors which may disclose malice. Improper use of criminal process, or malice, may appear from other facts. There was evidence that defendant's agents persisted in the prosecution even though they did not believe in the guilt of plaintiff. Such fact would permit a finding of malice or improper motive. Restatement, Torts, §668. While the want of probable cause does not in itself prove malice (*Simpson v. Montgomery Ward & Company,* supra, 354 Pa. 87, 102, 46 A. 2d 674), it is equally well settled that the jury may infer malice as a fact from the want of probable cause (*Stinson v. Smith,* 329 Pa. 177, 196 A. 843; *Curley v. Automobile Finance Co.,* 343 Pa. 280, 285, 23 A. 2d 48; *Hubert v. Alta Life Ins. Co.,* supra, 130 Pa. Superior Ct. 277, 284, 196 A. 513; Restatement, Torts, §669).

Defendant's argument that the court below erred in refusing a new trial relates principally to alleged errors in the charge of the court. Defendant asserts that basic error was committed by the trial judge when he changed the reading of the first special finding by adding the italicized portion: "Did the employees of Montgomery Ward and Company at the time *or times* of turning the information over to the Chief of Police, C. E. Fend, honestly and reasonably believe that Alberta Simpson had committed the crime of larceny?" [3] This change was made at the instance of plaintiff's attorney. The trial judge went on to explain that the words "or times" were added to cover the evidence relating to a pair of shoes which had been found under a counter in defendant's store between the time plaintiff was arrested on the afternoon of July 13th and the hearing the next morning. In this connection the trial judge in his charge

---

[3] No exception was taken or objection made by defendant to this form of the special finding.

continued as follows: "The particular controversy turns about the shoes that were found. Were they the same shoes? Should that have changed the defendant's attitude towards this case? Did the defendant by its agents, or should the defendant by its agents then have decided there was no longer an honest and reasonable basis for the prosecution?" Counsel for defendant did not object specifically to this portion of the charge although he had ample opportunity to do so. The evidence did show that a pair of white shoes had been found under the counter in defendant's store during the night following plaintiff's arrest. Under the circumstances, we are of the opinion that this portion of the charge did not contain fundamental error, that it did not inject collateral issues into the case, and that it did not tend to confuse the jury. This third trial was carefully conducted, and the trial judge successfully avoided the confusion which existed on the second trial when questions were submitted relating to the finding of a pair of white shoes under the counter (162 Pa. Superior Ct. 371, 377, 381, 57 A. 2d 571).

Immediately following the explanation as to the effect of the finding of the shoes, the trial judge in his charge stated: "Although the indictment charges the theft of shoes and baby garments, it appears now from the testimony of Mr. Bechtel that there is no contention here that the baby garments were stolen, but were left in the store; and for that reason that much of the indictment is not pressed by the defendant at this time." Standing alone, the above quoted instruction might well be erroneous and tend to confuse the jury as defendant now argues. However, defendant's counsel immediately questioned this statement of the trial judge who then went on to say to the jury, in an instruction favorable to defendant, that, since the baby garments were included in the indictment, they were a part of the case generally, and "That doesn't mean that the matter of

the baby garments might not have entered into Mr. Bechtel's mind in considering whether there was an attempt to steal the baby garments and it was thwarted. That would have a bearing on the mind of the individual who charged the theft, the later theft of a pair of shoes." Viewed as a whole, this part of the charge was free from reversible error.

Defendant also assigns as error the following portion of the charge of the court: "Your answer to the second question [relating to malice] is not quite as conclusive. If you find that the defendant's employees did use the criminal prosecution to try to induce or compel the payment of money, then it gives rise to the presumption not only of malice but of want of probable cause." Defendant argues that by the first of these statements the importance of the element of malice was minimized. Elsewhere in the charge the trial judge specifically defined malice; he told the jury what acts would amount to malice in the present case, and that the jury must determine from the evidence whether the defendant had acted maliciously. The burden which plaintiff was obliged to meet in order to make out a case was adequately set forth in the charge of the court. In questioning this portion of the charge defendant ignores the rule that a charge must be viewed in its entirety. *Rudy v. New York Life Ins. Co.*, 139 Pa. Superior Ct. 517, 12 A. 2d 495. We find no merit in defendant's assertion that this portion of the charge of the court was fundamentally erroneous.

Plaintiff, as part of her case, established that the bill of indictment had been ignored by the grand jury.[4] Defendant points out that the bill showed that defendant's employes were not called as witnesses before the grand jury, and complains of the statement in the charge of the court that "Some of the defendant's wit-

---

[4] See Restatement, Torts, §672.

nesses complain because they were not called before the grand jury; but the grand jury's dismissal of the bill of indictment is nevertheless final for the purpose of this case." In the absence of any explanation, the dismissal of the bill by the grand jury was conclusive. Restatement, Torts, §659. It is not necessary for us to pass upon defendant's right to explain the failure of its employes to appear as witnesses before the grand jury, as defendant attempted no such explanation. Defendant's effort to enter into such an explanation now is plainly an afterthought. Plaintiff's proof went no further than to show that the bill of indictment was ignored by the grand jury. The name of the chief of police may have been the only name endorsed on the back of the indictment, but defendant at the trial did not make any attempt or offer to explain this fact.

The court below properly refused defendant's motions for judgment and its motion for a new trial.

We are convinced that the third trial of this action was free from reversible error.

Judgment is affirmed.