Simpson *v.* Montgomery Ward & Company,
Appellant.

88

Argued March 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Lee C. McCandless*, with him *James E. Marshall*, and *Marshall & McCandless*, for appellant.

*J. Campbell Brandon*, with him *Brandon & Brandon, A. G. Helbling, W. D. Brandon* and *Hugh S. Millar*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 17, 1946:

Mrs. Alberta Simpson, aged 34 years, a resident of Beaver County, drove, in company with her mother, a distance of twenty-five miles on the afternoon of July 13, 1944 to defendant's store in Butler. Mrs. Donna Yarger McCall, at that time a clerk in that store, testified that she saw Mrs. Simpson "put a pair of shoes off the counter into a shopping bag she had between her and the counter". The clerk asked if she could help her and Mrs. Simpson replied "No". Mrs. McCall "got close enough to see in the shopping bag" and saw that "she really had a pair of shoes, and she was holding the

shopping bag close to her". Mrs. McCall reported to the Manager of the Shoe Department, J. J. Burns, that she had seen Mrs. Simpson "take a pair of shoes from the counter and put them in the shopping bag". The witness added: "As soon as she saw her she turned and started to walk real fast across the store". She saw her "enter a fitting room and he [Burns] was directly behind her". Burns reported the matter to H. F. Bechtel, the Assistant Manager of the store, and he and Burns went into the fitting room after Mrs. Simpson emerged from it. They examined "the bag that was left there by a lady" and it was "filled with children's clothes". These clothes were from the defendant's store but they were not wrapped and had no sales slip on them. No shoes were found in the bag. Bechtel then saw Mrs. Simpson "handling white shoes on the counter". He said he "saw her pick up a pair of shoes, open a carrying bag and drop them in, and just in a split second there was a move and her mother left the Department and they both started out to the front of the store". They went up the stairs to the Furniture Department and then "turned around and went down the steps and out on the street. Bechtel asked Mrs. Simpson to show him "the receipt for the pair of white shoes she had in the bag". She refused his request, saying he "would have to see the police". He said to her: "What about the other bag in the store?" She answered: "The one in the small room?" He testified: "I didn't mention where it was in the store." Bechtel then "re-entered the store and had Mr. Holliday", who at that time had charge of the Men's Division of the store, to "notify the police to follow me, as I was going to follow her". When Bechtel next went out into the street, Mrs. Simpson and her mother were down the street "near Woolworth's store" and the witness did not come "within close walking distance of them" until he got near Isaly's. How far that was from the Montgomery Ward Store does not appear, but Bechtel said Mrs. Simpson and her mother had been "out of (his) sight entirely".

The Chief of Police, C. E. Fend, then appeared and Bechtel pointed out Mrs. Simpson to him. The Chief took Mrs. Simpson and her mother to the police station and Bechtel returned to the store. Bechtel took the bag which had been found in the fitting room, to the Chief of Police's office and upon its being opened, merchandise belonging to the Montgomery Ward Store and valued at $14.88 was found. It "consisted of dresses, socks, pads and a small cap or so". No shoes were found in either that bag or in the bag which the Chief of Police examined at the police station. One pair of missing shoes was a little later found "under the blanket counter" in the Montgomery Ward Store. The other pair of missing shoes was never found.

Mrs. Simpson was permitted to go back to her home that afternoon, upon her promise to be present the next morning at nine o'clock. At this later time a hearing was held before the Alderman. Bechtel testified that he made no recommendation to the Chief of Police that Mrs. Simpson be held for court and the Chief of Police confirmed this by saying that none of the employees of the Montgomery Ward Company "urged him to make an information against this woman" and that he made it because he "thought there was enough evidence offered at the Alderman's office to warrant such an action", and that whatever action he took against Mrs. Simpson was taken in his "official capacity as Chief of Police of the City of Butler". Mrs. Simpson could not immediately produce bail after the hearing, and she was committed to the jail at "almost noon". She said she remained there "until late in the evening", but the record of the Alderman shows that bail in the form of $500 was entered for Mrs. Simpson by her attorney at 2 P.M. that day and she was released from custody.

Mrs. Simpson testified that she had shopped in the Montgomery Ward Store in *Beaver Falls* in her own county and that she was "not familiar with Butler streets" and had not shopped in Butler "to amount to

anything." She was apparently a total stranger to the clerks in the Butler store of the Montgomery Ward Company.

Neither Mr. Bechtel, Mr. Holliday, Mr. Burns nor Mrs. McCall were notified to appear before the Grand Jury when the case against Mrs. Simpson was called and as no evidence was presented against her, the Grand Jury ignored the bill against her. Mrs. Simpson then sued Montgomery Ward Company for damages for prosecuting her "falsely, maliciously and without any probable or reasonable cause" and "sought an indictment against her before the Grand Jury charging her with larceny". At the trial, testimony was offered in behalf of the plaintiff showing her arrest for larceny, the ignoring of the bill by the Grand Jury, and her good reputation for honesty. In charging the jury, the trial judge permitted the jury to find (1) that Montgomery Ward and Company "started the machinery of the criminal law in Butler County", and (2) that Montgomery Ward and Company in doing so acted without "probable cause and was motivated by malice".

The jury found against the defendant and awarded plaintiff $3,000. The defendant asked for judgment n. o. v. This was refused and this appeal followed.

The trial judge committed a fundamental error when he submitted the basic existence or non-existence of probable cause for the arrest of Mrs. Simpson *to the jury*.

There is no principle more firmly imbedded in the law than the principle that in case of malicious prosecution, the question of want of probable cause for the criminal prosecution which gave rise to the civil action, is a question *not for the jury but for the court*. We have said so in a long line of cases. In *Altman v. Standard Refrig. Co., Inc.*, 315 Pa. 465, 173 A. 411, this court said that the question: "Who is to judge the existence of probable cause", in a case of malicious prosecution "is settled . . . it is a question of law for the court." We reiter-

ated this in *Groda v. American Stores Company*, 315 Pa. 484, 173 A. 419. We also said in that case: "Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitutes proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action." It has been immemorially held that the public interest requires that the legally trained mind of the judge and not the more or less emotional minds of jurors, decide whether or not there was probable cause for the initiation of the prosecution. Jurors are likely to confuse the issue of the guilt or innocence of the defendant in the criminal case out of which the civil action originated with the basic issue whose determination decides the civil action. That basic issue is the want of probable cause for the criminal prosecution. Blackstone's Vol. 3, Sec. 127 says: "It would be a very great discouragement to the public justice of the kingdom if prosecutors who had a tolerable ground of suspicion were liable to be sued at law [for malicious prosecution] whenever their indictments miscarried . . . Any probable cause for proving it [the charge], is sufficient to justify the defendant". In *Robizsek v. Daum*, 220 Pa. 61, 64, 69 A. 96, we said: "What is probable cause, and whether it exists under an admitted or clearly established state of facts, is a question of law for the court." As recently as 1941 in the case of *Curley v. Automobile Finance Company*, 343 Pa. 280, 290, 23 A. 48, we said: "In cases of malicious prosecution . . . the trial judge and not the jury determines whether or not the prosecutor in the criminal case, [i.e. the defendant in the civil action trying] had an honest and reasonable belief in the existence of probable cause for the prosecution's initiation." In that opinion we quoted Thayer in his "Preliminary Treatise on the Law of Evidence" as to the reason for making the court instead of the jury the decider of the issue of probable cause as follows: (p. 286) "The reasons which

have availed to keep this particular question of fact, in actions for malicious prosecution and false imprisonment, in the hands of the court, are easily to be seen, and have already been suggested. It is the danger so often recognized by the courts, e.g. by Lord COLONSAY, in *Panton v. Williams*, 2 Q.B. 169, lest those who would come forward in aid of public justice should be intimidated or discharged." In *Bryant v. Kuntz*, 25 Pa. Superior Ct. 102, judgment on a verdict for the plaintiff was reversed without a venire. Judge ORLADY said: "The inquiry as to the probable cause goes back to the commencement of the prosecution, and it relates to the facts then known and as they then appeared. It is not confined to the truth of the matters that lead to the prosecution, but extends to their appearance as indicating the guilt or innocence of the accused. If probable cause is shown, it matters not whether the motive of the prosecutor be praiseworthy or malicious; and the undisputed evidence in this case made it the duty of the court below to affirm the defendant's seventh point and to direct a verdict for the defendant."

In *Taylor v. American International Shipbuilding Corp.*, 275 Pa. 229, 119 A. 130, which was an action of malicious prosecution by a defendant who had been found not guilty by an order of the court because of insufficient evidence of guilt, this court stated the facts which led to the arrest in the criminal case, as follows: Appellant was somewhat hampered in its work during 1918 through the constant thefts of automobiles, accessories and tires from its garage . . . Suspicion rested on appellee and three or four other men who worked at night in and about the garage, a man by the name of McWhorter being connected with them. McWhorter suddenly left appellant's service. He was discovered in a Georgia jail. On his way to Philadelphia, he charged the appellee (Taylor) with the larceny of an automobile and other accessories. Based on this information, reports of officers and the result of his own investigation,

one Vallely, an employee of appellant, charged appellee with the larceny of an automobile, accessories and tires.

Taylor sued the Shipbuilding Corporation in an action for malicious prosecution and the jury awarded him $2,000. This court reversed the judgment. We said: "It is not necessary for the defendant to show that the facts upon which the arrest was made actually existed. The sole inquiry is, was the knowledge of all the circumstances and the information received sufficiently strong in themselves to present a reasonable ground of suspicion of guilt, and did defendant honestly believe them to be true? It appears in plaintiff's evidence the officer had no animosity or ill feeling toward appellee. The court below should have held plaintiff's case failed to present a prosecution without probable cause, but did present one with probable cause . . . The judgment of the court below is reversed, the record is remitted with direction to enter a judgment for defendant on its motion for judgment n. o. v."

In *Roessing v. Pittsburgh Rys. Co.*, 226 Pa. 523, 75 A. 724, the facts were that the officers of the appellant company, upon information received by them, charged the appellee with the larceny of an automobile. The appellee, who was plaintiff in the court below, was found not guilty by a jury. This court said: "There was no dispute as to the facts which induced the prosecution, and therefore the responsibility for deciding whether these facts constituted probable cause was upon the court, and should not have been shifted to the jury. The rule is well settled. Thus in the late case of Robitzek v. Daum, 220 Pa. 61, it is said, 'What is probable cause, and whether it exists under an admitted or clearly established state of facts, is a question of law for the court'." See also *McCarthy v. De Armit*, 99 Pa. 63; *Fisher v. Forrester*, 33 Pa. 501; *Werner v. Bowers*, 318 Pa. 518, 178 A. 831; *Bruff v. Kendrick*, 21 Pa. Superior Ct. 468, and Restatement, Torts, Volume 3, Sec. 673.

In a footnote on page 506 of 38 Corpus Juris, it is said: "Want of probable cause is in all cases a question

of law which the court alone is competent to determine, and in relation to which the judge who tries the case is bound to express a positive opinion; and if instead of so doing he leaves it to the jury to determine, not only whether the facts alleged by plaintiff are true, but also whether, if true, they prove want of probable cause, he commits a fatal error." Citing *Bulkeley v. Smith*, 9 N. Y. Super. 261.

In *Stewart v. Sonneborn*, 98 U. S. 187, it is pointed out that the foundation of an action for malicious prosecution is malice; citing Lord MANSFIELD in *Farmer v. Darling* (4 Burr. 1791). The U. S. Supreme Court declared: "The existence of want of probable cause is essential to every suit for a malicious prosecution. Both that and malice must concur . . . It is . . . the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, . . . with instructions that the facts found amount to proof of probable cause, or that they do not."

In *Panton v. Williams*, 42 R. C. L. Reports, p. 622, which was a case of malicious prosecution, the judgment of the court below was reversed in an opinion by Chief Justice TINDAL because the trial judge left the question of probable cause *to the jury*. In that case the defendant had asked the court to instruct the jury that certain facts, if proved, amounted to probable cause and the court refused to so charge. In that case, Chief Justice TINDAL said, inter alia : In some cases of malicious prosecution, "the question has turned upon the inquiry, whether the facts stated to the defendant at the time, and which formed the ground of the prosecution, were believed by him or not; in other cases the inquiry has been, whether, from the conduct of the defendant himself, the jury will infer that he was conscious he had no reasonable or probable cause." He states that it is the province of the court to determine from the facts as they were found by the jury whether or not there was reason-

able and probable cause for the prosecution. He then concludes: "As the question both of law and of fact was left in this case entirely to the jury, we think the exception must be allowed, and that there must be a venire de novo."

In an action of malicious prosecution, plaintiff does not make out a prima facie case by proving only his arrest on a criminal charge and its termination in his favor. He must also show that "the defendant did not[1] have probable cause for initiating the proceedings": Sec. 672c Restatement, Torts. The issue on this phase of the case is: Did the defendant "honestly believe" that the accused committed the crime for which he was prosecuted and was that belief based on "a reasonable ground of suspicion of guilt": *Taylor v. Shipbuilding Corp.,* supra. Plaintiff must further show that the prosecution was motivated by malice; or, to put it as the Restatement of Torts, Sec. 672, expresses it, that the "primary purpose for which the proceedings were initiated was not to bring an offender to justice". *If* there is a "conflict in the testimony as to what the circumstances were" out of which the prosecution arose (Restatement, Torts, Sec. 673, comment d), there are two courses open to the trial judge. He can submit that testimony to the jury with instructions to render a special verdict (See footnote 3, post) answering, inter alia, the question as to the existence or non-existence of an honest, reasonable belief on the part of the person initiating the prosecution, of the guilt of the accused, and if the jury gives an *affirmative* answer to that question, the trial judge will enter judgment for the defendant. If the jury gives a *negative* answer to that question and also makes the other essential findings in plaintiff's favor, the jury shall

---

[1] See *O'Neill et al. v. Metropolitan Life Ins. Co.,* 345 Pa. 232, at p. 239, as to the duty of a party who has "the affirmative of an issue" being obliged to establish a negative proposition (such as, for example, *want* of probable cause in a case of malicious prosecution), which negative proposition is *a part of* "the affirmative of an issue".

then render a verdict for the plaintiff for the harm done him. If the trial judge does not require a special verdict, he should instruct the jury that they must first determine whether or not an honest, reasonable belief on the part of the initiator of the prosecution existed, and if they find that it did, it is their duty to return a verdict for the defendant. But if the jury finds that no such belief existed and *further finds* that the prosecution was motivated by malice, the jury should return a verdict for the plaintiff in such an amount as it deems proper, subject to correction by the court. If the jury finds that there was no malice behind the prosecution, the verdict must be for the defendant, even though probable cause for the prosecution was wanting.

38 Corpus Juris, p. 506, Sec. 195 makes this statement: "The facts having been determined by the jury, it is for the court to decide whether they constitute probable cause, and it is error to leave it to the jury not only to determine the facts but also whether they constitute probable cause; the court, not the jury, should draw that inference. The court may take a special verdict and determine the question or probable cause thereon as a matter of law, or it may instruct the jury hypothetically within the range of facts which the evidence tends to establish as to what constitutes probable cause, and thus leave it to the jury to determine only the facts." Citing cases from more than twenty-five jurisdictions, including Pennsylvania.

This court said in *Goodall v. Hess,* 315 Pa. 289, that "special findings by the jury on questions which were submitted to it by the trial judge" was "a course of procedure much to be commended in this class of cases". That case was an action based on alleged negligence by an operator of an automobile at a street intersection. In an action for malicious prosecution where the trial judge must determine the existence or non-existence of probable cause, after certain basic facts are admitted or established, the procedure of "special findings" by

the jury is not only "commendable" but practically necessary.

In *Helwig v. Beckner,* which was an action for malicious prosecution, 149 Ind. 131, 46 N.E. 644, it was said by the Supreme Court of Indiana: "What constitutes probable cause is a question of law, for the court to determine. Where a special verdict is returned, the jury must find the facts; and upon the facts found the court must, as a matter of law, decide whether there was probable cause. *Pennsylvania Co. v. Weddle,* 100 Ind. 138, 144; *Cottrell v. Cottrell,* 126 Ind. 181, 184, 25 N.E. 905. Malice, however, is a question of fact to be submitted to and found by the jury, and without proof of malice the action cannot be maintained; nor does the law infer malice from the want of probable cause."

In *Burton v. St. Paul, M. & M. Ry. Co.,* which was an action for malicious prosecution, 33 Minn. 189, 22 N.W., p. 301, the Supreme Court of Minnesota said: "What facts, and whether particular facts, constitute probable cause is a question exclusively for the court. What facts exist in a particular case, where there is a dispute in reference to them, is a question exclusively for the jury. When the facts are in controversy, the subject of probable cause should be submitted to the jury, either for specific findings of the facts, or with instructions from the court as to what facts will constitute probable cause. These rules involve an apparent anomaly, and yet few, if any, rules of the common law rest upon a greater unanimity or strength of authority. *Sutton v. Johnstone,* 1 Term. R. (Drun. & E.) 493, (Lord MANSFIELD;) *Panton v. Williams,* 2 Q.B. 169; *Lister v. Perryman,* L.R. 4 H.L. 521; *Stone v. Crocker,* 24 Pick. 81; *Kidder v. Parkhurst,* 3 Allen 393; *Ash v. Marliw,* 20 Ohio 119; *Stewart v. Sonneborn,* 98 U.S. 187; *Speck v. Judson,* 63 Me. 207; *Grant v. Moore,* 29 Cal. 44; *Thaule v. Krekeler,* 81 N.Y. 428; *Cole v. Curtis,* 16 Minn. 182, (Gil. 161.)"

In *Taylor v. Baltimore & Ohio S.W. Ry. Co.,* which was an action for malicious prosecution, 18 Ind. A. 692,

48 N.E. 1044, it was said: "Probable cause is a legal conclusion to be drawn by the court from the facts, and where the facts are found, and are beyond dispute, as in the case where a jury returns a special verdict, the question of whether the undisputed facts do or do not constitute probable cause is a pure question of law, to be decided by the court, and with which the jury has nothing to do, they having agreed upon the facts, and presented them to the court by their special verdict. Pennsylvania Co. v. Weddle, 100 Ind. 138; Cole v. Curtis, 16 Minn. 182 (Gil. 161); Stone v. Crocker, 24 Pick. 81; Grant v. Moore, 29 Cal. 644; Center v. Spring, 2 Iowa 393; Cottrell v. Cottrell, 126 Ind. 181, 25 N.E. 905 . . . The jury was asked to answer the following question: 'Did the said Stanley, before the affidavit and information mentioned in the complaint were filed and before visiting said De Wolfe & Goodman, investigate in good faith, and with an honest purpose, to determine who the guilty parties were respecting said car robberies?'"

Another serious error in the trial of this case was the admission of testimony as to this plaintiff's reputation for honesty, without first showing that this reputation was known [2] to those who made the complaint of shoplifting against her.

38 Corpus Juris, Sec. 159 b, p. 482 makes this statement: "According to some decisions plaintiff is not entitled to introduce evidence of his good character under any circumstances; and according to some decisions, it is error to admit evidence in chief of plaintiff's good reputation or character, the view being taken that such evidence is admissible only after his character has been attacked. However, according to the weight of authority, plaintiff may give evidence of his good character and reputation as a part of his case in chief for the purpose of establishing want of probable cause if his repu-

---

[2] *If A knows of B's good repute for honesty,* he will naturally be reluctant to accuse B of *dis*honesty. See Restatement, Torts, section 662, comment h.

tation was known to the defendant at the time the prosecution was commenced, or was of such general notoriety that defendant will be presumed to have known it, but not otherwise." (Citing cases.) In *Lewis v. Goldeman*, 241 Mass. 577, 136 N.E. 67, 24 A.L.R. 260, it was said: "The probative value of evidence as to such reputation in a case like the present [case of malicious prosecution] depends wholly on knowledge of it by the defendant."

The Montgomery Ward employees who accused this woman, apparently honestly believed that they saw her steal a pair of shoes from their employer's store and they reported that fact, as it was their duty to do. They knew nothing about her reputation.

Though defendant's counsel did not object to the introduction of evidence of plaintiff's honesty, this did not justify the court in admitting it. We said in *Com. v. Corrie*, 302 Pa. 431, 153 A. 743: "Courts of justice will not be blind to any breach of basic rights or impotent to vindicate them". To permit this plaintiff's physician (Dr. Swick) ; her brother-in-law, (John H. Heberling) ; the merchant whose customer she was and who testified: "I consider her an honest woman" (G. L. Forrest) ; and her grocer (John Horvath) who testified not only to plaintiff's good reputation but also to the fact that her father, who once traded with him "paid his bills", was a breach of the defendant's right to a fair trial. The trial judge even permitted a woman who was an inmate of the county jail during the few hours the plaintiff was there, to testify that she [the inmate] knew that she [the plaintiff] shouldn't be up there" and to testify as to the plaintiff's physical condition. All this testimony was highly improper and was prejudicial to the defendant.

This case should be re-tried in accordance with the law and procedure set forth in this opinion. It would make for a just verdict in this case if the trial judge would submit to the jury questions for special findings as to certain basic facts. See Restatement, Torts, Sec.

673, comment d. Among those facts [3] these should be included: (1) Did Mrs. Donna Yarger McCall honestly and reasonably believe that she "saw the younger woman" (Alberta Simpson) "put a pair off the counter" (of defendant's shoes) "into a shopping bag she had between her and the counter"? (2) Did Mrs. McCall report such an occurrence to the manager of the shoe department of the defendant's store, J. J. Burns? (3) Did Homer F. Bechtel, Assistant Manager of the defendant's store, on July 13, 1944, honestly and reasonably believe that he saw the plaintiff "pick up a pair of shoes" in defendant's store, "open a carrying bag and drop them in" and then "just in a split second leave the department" and go to the front of the store? (4) When H. F. Bechtel, defendant's Assistant Manager, made the complaint against the plaintiff to C. F. Fend, Chief of Police of Butler, was he acting on an honest and reasonable belief that he saw the plaintiff unlawfully take into possession the shoes which were the property of Montgomery Ward and Company?

The language Justice BRADLEY used in his opinion [4]

---

[3] "It is the province of a special verdict to find and place on record all the essential facts in the case. This includes the disputed as well as the undisputed facts. What is not found by the verdict is presumed not to exist, and no inferences as to matters of fact are permitted to supply the facts themselves which the verdict should have found. In entering judgment, the court is confined to the facts found by the special verdict, and unless they are sufficiently found no judgment can be entered. The jury must find the facts and the court declare the law on the facts so found. Such are the requisites of a special verdict as held in all of our cases": *Standard Sewing Machine Co. v. Royal Ins. Co.*, 201 Pa. 645, 647; *Kelchner v. Nanticoke Boro*, 209 Pa. 412; *Panek v. Scranton Ry. Co.*, 258 Pa. 589.

[4] This was a dissenting opinion by Justice BRADLEY. He dissented from the majority opinion only on the ground that when a man institutes "bankruptcy proceedings" against another, he if sued in an action to recover for the alleged wrongful and malicious institution for proceedings for bankruptcy against him, can avail himself of the defenses which are open to those who are sued for malicious prosecution only after proving that he is an *actual* creditor of the alleged bankrupt.

in *Stewart v. Sonneborn,* 98 U.S. 187, should be kept in mind by those judges who preside at the trials of actions for alleged malicious prosecution. Justice BRADLEY said: "What are the grounds and reasons for the stringent rules imposed upon a plaintiff in an action for malicious prosecution? Why is he obliged to prove actual malice, and why is it that the defendant may justify by probable cause? The reason undoubtedly is, that every man in the community, if he has probable cause for prosecuting another, has a perfect right, by law, to institute such prosecution, subject only, in the case of private prosecutions, to the penalty of paying the costs if he fails in his suit. If this were not so, it would deter men from approaching the courts of justice for relief. Prosecutions may fail from many causes independent of the justice of the case; and it would be very hard to visit a man with heavy damages for making a complaint, or bringing a suit, when he had probable cause for it . . . In the case of criminal charges, this right of making complaint is given to every man, for all are interested in the preservation of public order."

A case of malicious prosecution is not made out until there is established, first, want of probable cause and, second, malice. The want of probable cause does not in itself prove that malice motivated the prosecution. "Without malice want of probable cause is wholly insufficient to sustain a charge of malicious prosecution": 38 Corpus Juris, Sec. 27, p. 401, citing cases from fifteen jurisdictions, including *Madison v. Pa. R. R.,* 147 Pa. 509, 23 A. 764, 30 AmSR 756; *Dietz v. Langfitt,* 63 Pa. 234.

In the *Madison* case just cited, this court said in an opinion by Justice MITCHELL: "The circumstances clearly showed absence of malice . . . The public purpose of discovery of criminals and vindication of justice is apparent on the face of the whole proceeding. As was said in Emerson v. Cochran, 111 Pa. 622, 'a jury ought not to be permitted to infer malice from the mere want

of probable cause, when, by other circumstances, it is disproved.' Public policy and the demands of public justice cannot permit a jury to punish a prosecutor for proceeding under circumstances such as disclosed in this case. It is doubtless a hardship for plaintiff, an innocent man, to be subjected to arrest and imprisonment. But that is an inevitable occasional result of living in a civilized and orderly community. Some concession to public interests, and some sacrifice of individual rights, are part of the foundation on which society is supported."

In the *Dietz* case above cited, this court in an opinion by Chief Justice THOMPSON said: "The learned judge, however, charged that malice *or* want of probable cause was sufficient to entitle the plaintiff to recover. This was equivalent to instructing the jury, that malice of itself without the ingredient of want of probable cause, or *e converso,* want of probable cause without malice, would equally well support the action. That is to say, the one or the other, or either, would sustain it. Whether this was a lapse of tongue or pen we know not; but as it is in the charge returned with the record, we must presume it to have been given to the jury as it there appears. It was an undoubted and damaging error. The jury should, instead, have been instructed that malice AND want of probable cause must concur and be shown to entitle the plaintiff to a verdict. While malice may be inferred, sometimes from want of probable cause, where there is nothing to rebut the inference, still it is the inference of a fact, and this illustrates the error noticed in the rejection of the testimony offered to rebut the inference of malice to be drawn of want of probable cause, by throwing out the bill by the grand jury. The jury should have been instructed that where there is probable cause it is not of the slightest consequence whether the prosecutor be actuated by malice or not. PARK, J., in Mitchell v. Jenkins, 5 B. & Ald. 588, said: 'If there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable.' If this were not so, the

evil spirit of the prosecutor might redeem the evil act of the criminal."

If any person has a reasonable belief that he has seen or heard another person commit a crime, he is justified if he takes appropriate action to start the machinery of the criminal law against the supposed criminal. In *Seibert v. Price,* 5 W & S 438, 439, which was an action for a malicious prosecution of the plaintiff for perjury, the trial judge "put the question of probable cause upon the fact of what the plaintiff had actually sworn before the inquest, and not on the fact of what he was supposed to have sworn." The verdict was returned for the plaintiff. Upon appeal to this court, the judgment was reversed. This court, in an opinion written by Chief Justice GIBSON, said : "It was a matter of much doubt at the trial of the present cause, whether he had said that the alleged lunatic had been called as a witness in *Schoch v. Seibert* by the defendant, or not; insomuch, that the witnesses who swore positively about it were divided, even insomuch, that a majority were in favor of the affirmative. In this conflict of perception, then, suppose that the prosecutor had acted on a mistaken belief that the plaintiff had sworn what would undoubtedly have been a perjury, would he not have acted on what appeared to have been justifiable cause; and if he did so act, would it not repel the implication of malice? Again, if the same misapprehension was entertained by the by-standers, would it not materially increase, in an indifferent mind, the probability of the witness's guilt? What is justifiable probable cause, in the technical sense? It is a deceptive appearance of guilt arising from facts and circumstances misapprehended or misunderstood so far as to produce belief; and when the subject of belief is the crime of perjury, the misapprehension may have regard to the extent of the swearing, as well as the truth of it. The question of probable cause, may as well depend on the one as on the other, the difference being, that a misapprehension or doubt is more likely to occur in regard

to the former than the latter. Still, the tenor of the testimony, resting as it does in the understanding and memory of the hearers, who may have misapprehended or forgotten it, may not be accurately perceived by the prosecutor; for the uncertainty of human perception is well known to those who are familiar with the examination of facts depending on oral proof. No two eye-witnesses ever yet exactly agreed in their account of a transaction; and nothing is more frequent than the misapprehension of a person's words. A by-stander relying on his own ears, may be grossly mistaken; and when the matter has regard to the sum of a witness's testimony instead of the truth of it, there may be such a mistake as to produce an appearance of perjury sufficient to justify a prosecution of it. If, then, there was a reasonable belief in the minds of the prosecutor and the by-standers that the plaintiff swore to what it is admitted would have been an untruth, whether the belief was well founded or not, there was probable cause amounting to justification." See also *Chester S. Nelson v. National Casualty Company et al.,* Minn. 228 N.W. 437, A.L.R. Vol. 67, p. 509.

The Restatement of the Law, Torts, Vol. 3, Sec. 662, makes the following statement: "One who initiates criminal proceedings against another has probable cause for so doing if he (a) reasonably believes that the person accused has acted or failed to act in a particular manner, and (b) (1) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or (2) mistakenly so believes in reliance on the advice of counsel under the conditions stated in Sec. 666." See also section 662, comment g, and section 668, Restatement, Torts.

No motion for a new trial in this case was made in the court below. The appeal before us is from the refusal of the court below to enter judgment for the defendant non obstante veredicto. However, in such a state of the record, we have the right to award a venire facias de

novo [5] if we think the interest of justice requires it. See *Northern Tr. Co., Exr., v. Huber,* 274 Pa. 329, 335, 118 A. 217.

If within fifteen days this appellant petitions this court to reverse the judgment and award a venire facias de novo for the errors of law which intervened in this proceeding, such an order will be made. If no such petition is filed within the time stated, the order of the court below refusing to enter judgment for the defendant non obstante veredicto will be affirmed.

---

[5] As to the right of an appellate court at common law to "award a venire facias de novo", as distinguished from the order of a new trial, "which properly proceeds from the trial court", "for some error of law which intervened in the proceedings", see "20 Standard Encyclopedia of Procedure," p. 398, footnote 54 (a) and *Parsons v. Bedford,* 3 Pet. 432, 448; *Railroad Co. v. Fraloff,* 100 U.S. 24, 31; *C. B. & Q. R. R. Co. v. Chicago,* 166 U.S. 226, 246.