BIGGANS v. HAJOCA CORP.

DASH v. HAJOCA CORP.

Nos. 10163, 10164.

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1950.

Filed Dec. 18, 1950.

Harry R. Axelroth, Philadelphia, Pa. (Daniel J. McCauley, Jr. and Axelroth & Porteous all of Philadelphia, Pa., on the brief), for appellant.

Thomas D. McBride, Philadelphia, Pa. (David E. Karabel, Herbert F. Holmes, Jr., Philadelphia, Pa., on the brief), for appellees.

Before ALBERT LEE STEPHENS, MARIS, and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Much of the law governing the disposition of the issues here on appeal has been expounded at length in a recent opinion of this Court,[1] and need not be repeated. Even later decisions of Pennsylvania courts[2] demonstrate that the opinions handed down in Simpson v. Montgomery Ward & Co., 1946, 354 Pa. 87, 46 A.2d 674, and Curley v. Automobile Finance Co., 1941, 343 Pa. 280, 23 A.2d 48, which we interpreted in Van Sant v. American Express Co., 3 Cir. 1947, 169 F.2d 355, represent faithfully the law of Pennsylvania.[3] In charging the jury, the district judge noted the skill of counsel participating in the trial of the case at bar, which is disclosed also by the clarity of the record before us; it may be added that the opinion, D.C.E.D.Pa.1950, 94 F. Supp. 593 filed by the court below in denying the motion of defendant for judgment or for a new trial is a lucid analysis and adjudication of the questions pressed on this appeal. In view of the foregoing factors, we need not launch into extended comment.

The issues posed by the instant appeal are (a) whether the trial judge was in error in permitting the jury to decide whether or not defendant had probable cause in instituting the criminal proceedings against plaintiffs; (b) whether the fact that defendant was acting under advice of counsel immunized defendant against liability in malicious prosecution actions; (c) whether a "crime policy" was erroneously admitted in evidence; and (d) whether a judgment as to damages constituted prejudicial error. Our answer, as to all the issues, is in the negative.

In the lower court, plaintiffs have won a jury verdict and a judgment. Resolving disputed facts in accordance with the verdict,[4] we may summarize the testimony as follows:

1. Van Sant v. American Express Co., 3 Cir.1947, 169 F.2d 355.

2. See Jones v. MacConochie, 1948, 162 Pa.Super. 124, 56 A.2d 284; and Krouse v. Feldshur, 1950, 166 Pa.Super. 441, 72 A.2d 140.

3. As was the situation in the Van Sant case, diversity of citizenship is here the basis of federal jurisdiction, and the Pennsylvania system of law is to be administered by the federal court "in all except details related to its own conduct of business." Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 555, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528.

4. The verdict was general, no specific questions having been submitted by either side. Defendant has suggested that our opinion in the Van Sant case, supra, contemplated that the provisions of Rule 49, F.R.C.P. 28 U.S.C.A.Federal Rules of Civil Procedure, be utilized regularly in malicious prosecution cases. We did say in that case that the submission to the jury of questions for special findings as to the basic facts would have made for a just verdict. Moreover, our experience in considering appeals in jury cases leads us to the conclusion that the interests of justice in general and the more adequate review of such cases in particular would be advanced if the special verdict procedure were used more widely than at present. See Skidmore v. Baltimore & O. R. Co., 2 Cir.1948, 167 F.2d 54, certiorari denied 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371. Nonetheless,

Plaintiffs ("Dash" and "Biggans"), plumbing contractors, had been purchasing substantial quantities of plumbing supplies and fixtures from defendant ("Hajoca") over a considerable period of time.[5] In August of 1947, Hajoca, believing that inventory[6] was disappearing unaccountably from its Philadelphia warehouse on North 9th Street, hired operatives of a private detective agency. One Lees, an employee of Hajoca for more than forty years, was seen by these detectives, who were in plain sight, to be delivering to plaintiffs[7] various articles, without making contemporaneous registry of them. The total value of those articles, as to each plaintiff, was $216 or less. Informed of what the operatives saw, the Hajoca officers asked the Hajoca general counsel whether further legal action was in order. Those officers did not tell counsel that, over an appreciable period of time, the company practice at the warehouse with regard to the registry of sales had been so lax that specific company corrective instructions on that very subject had been issued in August of 1947; nor did the Hajoca officers tell counsel that a claim had been made on a bond which presumably covered the company against such loss. The Hajoca general counsel, in turn, referred the information supplied him to another attorney, who was not advised of the standing, reputation, and responsibility of the plaintiffs. Both lawyers approved action which led to the arrest of Lees and another employee and later, after receiving further information,[8] of both plaintiffs. Neither plaintiff was asked, or given the opportunity, to explain the circumstances which appeared to implicate him in illegal activities. Lees and plaintiffs were eventually tried together, in the Quarter Sessions Court of Philadelphia County, and all were acquitted. The complaints at bar followed.[9]

We think there was abundant evidence from which the jury could find, as the pivotal question of fact, that Hajoca did not have an honest and reasonable belief in the existence of a probable cause for the initiation of the prosecution of plaintiffs. See Curley v. Automobile Finance Co., 343 Pa. 280 at page 290, 23 A.2d 48 at page 53, and Campbell v. Yellow Cab Co., 3 Cir.1943, 137 F.2d 918, 922. As is well outlined in 3 Restatement, Torts, 1938 ed., § 662g, "Whether the accuser acts reasonably in relying upon the accuracy of such information [given by a third person] depends not only upon the informant's veracity * * * but also upon his [the accuser's] opportunity for accurate observation and his equipment for making it."[10] From the evidence introduced, there was a permissible, if not compelling inference that the Hajoca officials and their attorneys had failed to take the elementary precaution of checking with their own supervisory personnel to ascertain what the warehouse practices

---

we recognize that under the rule, the ultimate determination of the desirability of requiring special findings in a particular case is confided to the discretion of the trial judge and we see no abuse of that discretion in this case.

5. Dash had dealt with Hajoca for 15 years, and Biggans with Hajoca for 2 or 3; their yearly purchases from Hajoca, at the time of their arrest, were $11,335.63 and $18,032.81, respectively.

6. The claim made by Hajoca upon its insurance company was in excess of $134,000.

7. Plaintiffs were not associated in any way. Their cases were consolidated for trial, owing to the similarity of the factual and legal questions involved.

8. The new matter was a statement by one of the employees admitting the receipt of money—apparently, tips—from plaintiffs. There had also been testimony indicating other irregularities in warehouse procedure, such as drunkenness of employees, free access to company supplies by wandering customers, and unrecorded exchanges of articles.

9. It is noted that Lees too brought a similar action against Hajoca. Nothing contained in this opinion, of course, is intended as an evaluation or adjudication of his right to recover, since his complaint is not before us.

10. This section of the Restatement is cited with approval in Simpson v. Montgomery Ward & Co., 1946, 354 Pa. 87, at page 105, 46 A.2d 674, at page 682. See also 3 Restatement, Torts, § 662i.

actually were. Moreover, the huge discrepancy between the value of the missing inventory and the value of the merchandise which Hajoca thought plaintiffs, not unimportant customers, were purloining was such as to permit a jury reasonably to conclude that Hajoca had rushed into a prosecution which a check of its own records might well have prevented. That Hajoca did not possess the reasonable belief which Pennsylvania law requires was clearly within the jury ambit.

■ Likewise, it was within the scope of the jury to conclude that the prosecution of plaintiffs was actuated by malice, in the legal sense. We can add but little to the comments of the court below on this question. The Curley and Van Sant cases, supra, echo the precepts set forth in Topic 4, Chapter 29, of 3 Restatement of the Law of Torts, 1938 ed. There being evidence that the activities of Hajoca were prompted in part by hope for private gain, the jury was the appropriate fact-finder as to whether Hajoca had an honest and reasonable belief in the guilt of plaintiffs.

■ Hajoca contends, however, that the foregoing considerations are not here applicable, both because the company sought and acted upon advice of counsel and because the basis for finding a motive of private advantage was a "crime policy," which, Hajoca urges, was inadmissible. In Jones v. MacConochie, 1948, 162 Pa. Super. 124 at page 127, 56 A.2d 284 at page 286, however, the principle was reiterated that advice of an attorney is a defense when sought in good faith and upon full disclosure. See also 3 Restatement of the Law of Torts, 1938 ed., § 666. In the light of the record, we are hardly

prepared to say as a matter of law that Hajoca made full disclosure of the facts to the attorneys consulted or that a specific jury finding of lack of good faith would have been capricious. As for the crime policy, there was competent evidence that Hajoca had been "forced by the bonding company to make an example of" plaintiffs. The policy itself, under which Hajoca gave a notice of loss prior to the arrest of plaintiffs, on its face provided coverage against "loss of property due to any dishonest or fraudulent act committed by any of the insured's employees, whether acting alone *or in collusion with others.*" (Emphasis added.) We believe the jury was entitled to examine the policy and ascertain whether the purpose of Hajoca in instituting criminal proceedings was to prove collusion between its employees and plaintiffs and thereby recoup its losses through its insurance.

Thus, no reason appears why the case at bar should not be governed by the same principles which controlled in the Curley and Van Sant cases.

■ The remaining major objection of Hajoca stems from the charge of the court concerning punitive damages. Citing Pennsylvania decisions [11] to the effect that there must be a reasonable relation between punitive damages awarded and the actual damages suffered, Hajoca asserts that the court did not inform the jury of that requirement. We shall assume without deciding that the rule enunciated in those Pennsylvania decisions is consonant with, or has not been amended as a result of, that propounded in 4 Restatement of the Law of Torts, 1939 ed., § 908.[12] The ready answer to that issue is

11. Givens v. W. J. Gilmore Drug Co., 1940, 337 Pa. 278, 10 A.2d 12; Thompson v. Swank, 1934, 317 Pa. 158, 176 A. 211; Mitchell v. Randal, 1927, 288 Pa. 518, 137 A. 171; and Rider v. York Haven Water & Power Co., 1915, 251 Pa. 18, 95 A. 803.

12. But see Hughes v. Babcock, 1944, 349 Pa. 475, 37 A.2d 551, where the Supreme Court of Pennsylvania both stated that the amount of exemplary damages must

not be disproportionate to the award of compensatory damages, and cited a subsection of § 908, 4 Restatement, Torts, 1939 ed., as authority for the principle that "not merely the act itself must be considered, but all the surrounding circumstances, including the motives of the wrongdoer, and the relations between the parties." 37 A.2d at page 554. Subsection (c) of Section 908 specifically provides that "Compensatory damages in a trifling amount and substantial

that Hajoca is unable to show prejudicial error. The jury awarded $15,000 to each plaintiff. We cannot say that these awards included any sum representing "smart money", since the compensatory damages, unliquidated in amount, for the humiliation and loss of reputation of two responsible businessmen with families could well attain the amount found by the jury.

Moreover, an equally cogent reason for rejecting this argument is that Hajoca failed to comply with Rule 51, F.R.C.P. 28 U.S.C.A. Federal Rules of Civil Procedure, which reads in pertinent part as follows: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto * * *, stating distinctly the matter to which he objects and the grounds of his objection." Here Hajoca counsel did file fourteen points for charge, no one of which called for an instruction that there must be a reasonable relation between the punitive and compensatory damages awarded. Although he did except to the portion of the charge which dealt with punitive damages, he couched his remarks in only general language which in no way could be said identifiably to raise the issue here

under consideration. We see no reason why the general rule should not be applied that "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial." Palmer v. Hoffman, 1943, 318 U.S. 109 at page 119, 63 S.Ct. 477 at page 483, 87 L.Ed. 645. We are satisfied that, in accordance with the remark made by the court below immediately after he instructed on punitive damages, the jury did bring "good common sense and mature judgment" into its determination of the issue.

The numerous other objections raised by defendant need not be detailed. The record of this closely-contested trial reveals that defendant had its day in court and fully availed itself of the opportunity. We find no prejudicial error.

For the foregoing reasons, the judgment of the district court will be affirmed.

punitive damages in the same verdict are not necessarily inconsistent."

An interesting indication of how far the Restatement of Torts has become accepted as the law of Pennsylvania is to be found in the article, "The Restatement of Torts in Pennsylvania 1939–1949," by Peter Florey, Esq., in the October, 1950 issue of the Pennsylvania Bar Association Quarterly.